UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


HERMAN ALVIN TUCKER, JR,           :      CIVIL NO. 3:11-CV-1599
                                   :
              Plaintiff            :      (Judge Caputo)
                                   :
         v.                        :      (Magistrate Judge Smyser)
                                   :
RYAN EIKER, *et al.*,              :
              Defendants           :


**<u>REPORT AND RECOMMENDATION</u>**

The plaintiff claims that police officers used excessive force against him during an arrest.  Four defendants have filed two motions to dismiss some of the claims against them in the plaintiff's amended complaint.  We recommend that the two motions to dismiss be granted and that the claims that are the subjects of the motions be dismissed.


I.  Background and Procedural History.


The plaintiff, a prisoner proceeding pro se, commenced this 42 U.S.C. § 1983 action by filing a complaint on August 25, 2011.  After reviewing the complaint and determining

that it failed to state a claim upon which relief can be granted against some of the defendants, we granted the plaintiff leave to file an amended complaint.  The plaintiff filed an amended complaint on October 13, 2011. (Doc. 8).

The amended complaint names the following individuals and entities as defendants: Ryan Eiker, Richard Hileman, the Carroll Valley Borough Police Department, Matthew Trostel, Chad Topper, and the Cumberland Township Police Department. Defendants Eiker and Hileman are officers with the Carroll Valley Police Department, and defendants Trostel and Topper are officers with the Cumberland Township Police Department.  The court dismissed the claims as to the Carroll Valley Borough Police Department and the Cumberland Township Police Department for failure to state a claim upon which relief can be granted. (Doc. 23).  The plaintiff claims that the officers used excessive force on him in arresting him.  He is seeking compensatory and punitive damages.

We will recommend herein that the plaintiff's official capacity, Fourteenth Amendment excessive force, falsification

2

of the official police report, conspiracy, intentional
infliction of emotional distress, negligent infliction of
emotional distress and official capacity punitive damages
claims against the moving defendants be dismissed.  We further
recommend that the case be remanded to the undersigned for
further proceedings.

II.  The Amended Complaint.

        The plaintiff alleges that on March 13, 2010, at
approximately 10:05 p.m., he was pulled over for suspected DUI.
He made a right turn down "an orchard farm driveway," and he
waited in the orchard until the police arrived.  Officers Eiker
and Trostel arrived, struck his driver's side window with
something, flashed a flashlight into his vehicle, pointed a gun
at him and yelled, "police put your hands up."

        The plaintiff then raised his hands.  One of the
officers yelled, "I said put your fucken hands up."  He
responded, "they are up."  Officer Eiker yanked his door open,
grabbed him and threw him to the ground on his left shoulder.

Officer Eiker jumped on his back with his knee.  Officer Eiker said, "I should kick your brains in you fucken piece of shit." Officer Eiker then placed handcuffs on the plaintiff.

Officer Topper then arrived on the scene.  The officers picked the plaintiff up and walked him around the back of his truck and over to a high deer fence.  The officers pulled two sections of the fence apart.  They told him to climb over.  He was unable to climb over the fence.  He told the officers that it was hard for him to get through the fence with his hands tied behind his back.  Officer Eiker told him to go through the fence.  Officers Eiker and Trostel picked him up and threw him through the fence.  He then told the officers, "ouch my knee, my knee" and "I think you just broke my leg."

Officer Hileman then said, "how about I kick your fucken guts out and see what else we can brake."  Officers Trostel and Topper got him to his feet and walked him down the pathway to the police car.  He was leaning to his right because his ankle was in excruciating pain.  He was leaning on an officer who kept pushing him off, saying "stay the fuck off

4

me."  When he got to the police car, he had to back in, sit down, and slide in because of the pain in his ankle.

He was taken to the Gettysburg Hospital where Dr. Rudnick examined him.  While he was waiting for the results of the examination, he needed to use the restroom.  He was escorted there by Officer Trostel.  While the plaintiff was urinating, a nurse came in and stuck a cup in the stream.  He stopped urinating.  The nurse said that there was not enough.  Officer Trostel then asked him why he didn't let the nurse do her job.  He responded, "she wasn't doing her job she was doing yours'."  The officer grabbed him by the back of the neck and pushed him forward.  He had to put his hands up to keep his face from hitting the wall.

Dr. Rudnick informed him that he had a sprained and bruised left shoulder, a sprained, bruised and swollen right ankle, a bruised and swollen right foot, a right fibula fracture and a cut on his forehead.  Doctor Rudnick put stitches in his forehead and a cast on his right leg and ankle.

The complaint contains twenty-four counts.  The plaintiff asserts violations of his Fourth and Fourteenth Amendment rights.  He also asserts claims that he characterizes as falsifications of police reports, conspiracy, intentional and negligent inflictions of emotional distress, and deliberate indifference.  He also asserts claims of negligent training against the police department defendants.

Defendants Eiker and Hileman filed their motion to dismiss portions of the plaintiff's amended complaint on December 2, 2011.  Defendants Topper and Trostel filed their motion to dismiss portions of the plaintiff's amended complaint on December 20, 2011.  Those motions have been briefed, are meritorious and should be granted.

III.  Motion to Dismiss and Pleading Standards.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the

complaint in the light most favorable to the plaintiff, determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. V Twombly*, 550 U.S. 544, 555 (2007). However, more is required than labels, conclusions and a formulaic recitation of a cause of action. Id. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.* "While

legal conclusions can provide the framework of the complaint, they must be supported by factual allegations." *Ashcroft, supra*, 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra*, 129 S.Ct. at 1949 (quoting *Twombly, suprs*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers.'" *Erickson, supra*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

IV.  Discussion.

    A.  Official Capacity Claims

All four moving defendants argue that the plaintiff's official capacity claims should be dismissed because they fail to state a claim upon which relief can be granted.  We agree.

The court dismissed the amended complaint as to the Carroll Valley Borough Police Department and the Cumberland Township Police Department because the plaintiff did not identify a specific custom or policy that resulted in a violation of his constitutional rights.  To the extent that the plaintiff brings claims against the police officer defendants in their official capacities, he is really bringing claims against the police departments, namely the Carroll Valley Borough Police Department and the Cumberland Township Police Department.

A municipality is a "person" for purposes of § 1983. *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978)). But § 1983 does not allow municipal liability under a theory of *respondeat superior*. *Id.* As such, a municipality is not liable under § 1983 merely for employing someone who violates a person's civil rights; rather, a municipality is liable only where it has in place a policy or custom that led to the violation. *Id.* This rule ensures that a municipality will be liable only when it is the "moving force" behind the plaintiff's injury. *Id.* The plaintiff bears the burden of identifying the policy or custom.[1] *Id.*

As long as the government entity receives notice and an opportunity to respond in an official capacity lawsuit, in all

---

1.   A policy is shown when "a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pitt.*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom is defined as "such practices of state officials so permanent and well-settled as to constitute law," which can be established by showing the policy maker's knowledge and acquiescence to the custom. *Id.*

respects other than name, it is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166, 15 S.Ct. 3099 (1985). "It is not a suit against the official personally, for the real party in interest is the entity.  Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.*  Thus, the plaintiff's official capacity claims fail as the claims against the municipalities named in the amended complaint were dismissed for failure to state a claim upon which relief can be granted.

      B.  Fourteenth Amendment-Excessive Force

     The defendants argue that to the extent that the plaintiff brings claims under the Fourteenth Amendment against them for using excessive force, the claims should be dismissed. We agree.

The appropriate analysis for the plaintiff's excessive force claims is under the Fourth Amendment.  The Supreme Court held in *Graham v. Connor*, 490 U.S. 386, 395 (1989):

> all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other "seizure' of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides a explicit textual source of constitutional protection against this sort of physically intrusive government conduct, that Amendment, not the more generalized notion of "substantive due process," must be a guide for analyzing these claims.

*Id.*  Thus, we recommend that the plaintiff's Fourteenth Amendment excessive force claims be dismissed.  However, in keeping with the principle that the court must construe a *pro se* complaint liberally and should consider all constitutional theories that might apply to the facts alleged by a *pro se* § 1983 plaintiff, the excessive force claims should not be dismissed insofar as they are considered to be Fourth Amendment claims.

C.  Falsification of the Official Police Report

The moving defendants argue that the plaintiff's claim that they violated his rights by filing false police reports against him fails to state a claim upon which relief can be granted.  The amended complaint states as to defendant Eiker and as to defendant Trostel that the defendant, "with malice aforethought, made false statements in his report of the incident and allegations of things the plaintiff had said to excuse him from his outrageous conduct and the harm caused by the plaintiff."  (Doc. 8, p. 5, 7).  We will construe the amended complaint as pleading a Fourth Amendment violation for malicious prosecution.

The filing of a false police report is not in itself a constitutional violation.  *Jarrett v. Township of Bensalem*, 312 Fed. Appx. 505, 507 (3d Cir. 2009).  Furthermore, a plaintiff cannot state a claim for damages under 42 U.S.C § 1983 against a police officer for allegedly giving perjured testimony at his criminal trial.  *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).  Additionally, if a § 1983 plaintiff is

13

seeking damages for an allegedly unconstitutional conviction or imprisonment or other harm which would overturn a conviction, the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). When the underlying conviction has not been reversed or invalidated, a § 1983 claim is not cognizable. *Id.*

In *Winston v. Bauer*, 2010 WL 3811314 *4 (W.D. Pa. 2010), the Court considered plaintiff Winston's complaint to be asserting that Winston had been wrongly arrested and prosecuted for a DUI conviction on the basis of falsified evidence. *Id.* The Court dismissed the complaint pursuant to *Heck* because Winston's conviction had not been reversed or invalidated.

As a result of the events described in plaintiff's amended complaint, the plaintiff pled guilty to driving under

14

the influence of alcohol, fleeing or attempting to elude an
officer, agricultural vandalism, and driving while having a
blood alcohol level of .02 or greater while license is
suspended.  *See* Doc. 16-5 at 3.  The plaintiff has not alleged
that his conviction had been overturned.  Therefore, it will
be recommended that the claims against defendants Eiker and
Trostel for falsification of police reports be dismissed.

       D.  Conspiracy

       The plaintiff alleges that defendants Eiker, Hileman,
Trostel and Topper conspired "with malfeasance to make false
statements about the incident and what the plaintiff said."
(Doc. 8, pp. 5, 6, 7, 8).  These defendants argue that the
plaintiff has failed with this allegation to state a claim
upon which relief can be granted.  Assuming *arguendo* a claim
of a conspiracy to violate a federally protected right,
nevertheless in pleading a conspiracy a plaintiff may not rely
on conclusory allegations.  *D.R. by L.R. v. Middle Bucks Area
Vocational Technical School*, 972 F.2d 1364, 1377 (3d Cir.
1992).

15

"Direct evidence of a conspiracy is rarely available and . . . the existence of a conspiracy must usually be inferred from the circumstances . . . the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of the conspiracy: agreement and concerted action." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009).  The plaintiff has not alleged facts from which it can reasonably be inferred that the defendants reached an agreement with regard to falsification of the police reports.  Further, under *Heck* as discussed above, the plaintiff's conviction negates his ability to state a viable § 1983 claim.  Thus, the conspiracy claim should be dismissed.

E.   Intentional Infliction of Emotional Distress[2]

The defendants argue that the plaintiff has failed to state a state law claim upon which relief can be granted of an

_____

[2].  The plaintiff indicates in his brief in opposition to the motion to dismiss "WITHDRAWN" in the section for his opposition argument for the intentional infliction of emotional distress claim.  (Doc. 23, p. 8).

16

intentional infliction of emotional distress.  Under
Pennsylvania law, in order to state an actionable claim for an
intentional infliction of emotional distress, a plaintiff must
plead facts that would support a claim that 1) the conduct of
defendant was intentional or reckless; 2) the conduct was
extreme and outrageous; 3) the conduct caused emotional
distress; and 4) the distress was severe.  *Williams v.
Guzzardi,* 875 F.2d 46, 52 (3d Cir. 1989).

In order to qualify as extreme and outrageous conduct,
the alleged conduct must "go beyond all possible bounds of
decency, and . . . be regarded as atrocious . . . and utterly
intolerable in civilized society."  *Buzcek v. First Nat'l Bank
of Mifflintown*, 531 A.2d 1122, 1125 (Pa.Super.Ct. 1987).  The
Pennsylvania Superior Court has held that "it is for the court
to determine in the first instance whether the defendant's
conduct may reasonably be regarded as so extreme and
outrageous."  *Johnson v. Caparelli*, 404, 625 A.2d 668, 671
(Pa.Super.Ct. 1993).  The defendants' alleged conduct may be
seen by at least some observers as extreme and outrageous,
even though what is described is an interaction between a

17

criminally drunken man and police officers tasked with apprehending and controlling that man, an interaction which could well lead to harsh language and injuries.

However, the plaintiff does not plead severe emotional injury.  He pleads physical injuries.  He does not state a claim of an intentional infliction of emotional distress upon which relief can be granted.

F.  Negligent Infliction of Emotional Distress

The plaintiff's claim for negligent infliction of emotional distress alleges that defendants Eiker, Trostel and Topper caused emotional distress to the plaintiff by throwing him to the ground and then through the fence resulting in injury. (Doc. 8, pp. 6, 7, 8).  The plaintiff further states that he "was also under psychiatric care and on medication for Bi-polar, depression, anxity/panic(sic) attacts(sic) and agoraphobia."  *Id.*  The plaintiff further alleges that Trostel forced him to walk on a wounded leg and ankle when he knew the plaintiff was injured.  *Id.* at p. 7.

The defendants argue that the plaintiff's claims are barred by the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §§ 8541-8564.  Under the Act, political subdivisions and their employees are protected from civil damages actions except as the Act itself provides.

42 Pa. C.S.A. § 8550, titled Willful Misconduct provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

*Id.*

The Pennsylvania Supreme Court has defined willful misconduct as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be

19

implied." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994).

"Otherwise stated, the term willful misconduct is synonymous with the term intentional tort." *Id.* Because a negligent infliction of emotional distress claim is predicated on negligence and not intent, the wilful misconduct exception to official immunity does not apply here. See*, e.g., Heckensweiler v. McLaughlin*, 517 F.Supp.2d 707, 720-21 (E.D. Pa. 2007)(dismissing negligent infliction of emotional distress claims against two township police officers based on official immunity and reasoning that the wilful misconduct exception cannot apply to acts of negligence); *Moser v. Bascelli*, 865 F.Supp. 249, 253-54 (E.D. Pa.1994) (finding that police officer was immune from negligent infliction of emotional distress claim but not immune from intentional infliction of emotional distress claim under Section 8550).

        Defendants Eiker, Trostel and Topper are immune from the negligent infliction of emotional distress claim because the willful misconduct exception under Section 8550 does not apply.  Thus, we recommend that the plaintiff's claims for negligent infliction of emotional distress be dismissed.

20

G.   Punitive Damages

The plaintiff has a made a claim for "[c]ompensatory and punitive damages from all defendants individually and severally" in his amended complaint.  Defendants Eiker and Hileman have moved to dismiss any claim against them in their official capacities for punitive damages.  As discussed above, we will recommend the dismissal of the official capacity claims against the defendants.   Therefore, we will recommend the dismissal of the punitive damages claims against the defendants acting in their official capacities.  Because the claims against the defendants in their official capacity represent actions against the municipality, the plaintiff's claim for punitive damages must also be dismissed.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

V.  Recommendations.

Based on the foregoing, it is recommended that the defendants' motions (docs. 16 & 17) to dismiss be granted.  We recommend that the plaintiff's official capacity, excessive

force under the Fourteenth Amendment, falsification of the official police report, conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress and official capacity punitive damages claims be dismissed. The defendants did not move to dismiss the Fourth Amendment excessive force claims or the battery claims.  It is recommended that the case be remanded to the undersigned for further proceedings on those claims.

We further recommend that although the defendants did not move to dismiss the Eighth Amendment deliberate indifference claim, the claim should be dismissed as the plaintiff was a pre-trial detainee when the allegations occurred. The Eighth Amendment only applies to convicted prisoners.  *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: April 26, 2012.